Submitted on the record January 8, ballot title referred to Attorney General
for modification February 23, modified ballot title certified March 20, 2007
(342 Or 505)

Glenn PELIKAN,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S54203)
(Control)

Charles TAUMAN,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S54288)
(Cases Consolidated)

153 P3d 117

Kevin L. Mannix, of Kevin Mannix, PC, Salem, filed the petition for petitioner Pelikan.

Steven C. Berman, of Stoll, Stoll, Berne, Lokting & Shlachter, PC, Portland, filed the petition and reply to respondent's answering memorandum for petitioner Tauman.

Paul L. Smith, Assistant Attorney General, Salem, filed the answering memoranda for respondent. With him on the memoranda were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

KISTLER, J.

**KISTLER, J.**

These consolidated ballot title review proceedings brought under ORS 250.085(2) concern the Attorney General's certified ballot title for Initiative Petition 51 (2008). Because petitioners submitted timely written comments to the Secretary of State concerning the Attorney General's draft ballot title, they may seek judicial review of the certified ballot title. *See* ORS 250.085(2) (stating that requirement). We review the certified ballot title for substantial compliance with the requirements of ORS 250.035(2). *See* ORS 250.085(5) (stating standard of review). For the reasons explained below, we refer the ballot title to the Attorney General for modification.

This case arises in an unusual procedural posture. After receiving comments on the draft ballot title for Initiative Petition 51, the Attorney General wrote a letter to the Secretary of State describing the draft ballot title, the comments that he had received, and the modified ballot title that he intended to certify. However, instead of certifying the modified ballot title for Initiative Petition 51, the Attorney General mistakenly certified a ballot title for a different initiative petition. On review, all the parties agree, and so do we, that the ballot title that the Attorney General certified must be modified. *See* ORS 250.085(8) (requiring modification of ballot title that fails to substantially comply with ORS 250.035).

The dispute in this case concerns the ballot title that the Attorney General intended to certify. Petitioner Pelikan and the Attorney General urge us to certify that ballot title. Petitioner Tauman argues that the intended ballot title does not substantially comply with the requirements of ORS 250.035. Although ORS 250.085 generally contemplates review of certified ballot titles, this court has considered challenges to the ballot title that the Attorney General intended to certify. *See Carley / Towers v. Myers*, 340 Or 222, 132 P3d 651 (2006) (so doing). Following *Carley / Towers*, we turn to Tauman's objections to the intended ballot title.

The proposed measure, if adopted, would add the following text to the Oregon Revised Statutes:

"(1)   In any civil action, no lawyer may charge a client a contingent fee in excess of the following:

"(a)   25% of the first $25,000 recovered, and

"(b)   10% of any recovery above $25,000[.]

"(2)   A contingent fee means a fee where the lawyer is paid a fee as a percentage of any money which is awarded in a legal case.

"(3)   This contingent fee limitation does not apply to costs and expenses, which may be fully reimbursed to the lawyer.

"(4)   This Act takes effect upon passage and applies to all contingent fee agreements made on or after the effective date of this act."

The Attorney General intended to certify the following ballot title for Initiative Petition 51:

"LIMITS AMOUNT OF CONTINGENT FEES THAT LAWYERS MAY CHARGE CLIENTS FOR REPRESENTATION IN CIVIL CASE

"RESULT OF 'YES' VOTE:   'Yes' vote limits contingent fee lawyer may charge in civil case: 25% of first $25,000 recovered, 10% of recovery above $25,000.

"RESULT OF 'NO' VOTE:   'No' vote retains current law, placing no limitations on percentage of recovery in civil case that a lawyer can charge under a contingent fee agreement.

"SUMMARY:   Current law does not define the phrase 'contingent fee' in lawyer-client context. Current law places no limitations on the percentage of recovery or award that a lawyer can charge a client as part of a contingency fee. Measure defines 'contingent fee' as a fee where lawyer is paid a percentage of money awarded to the client in a legal case. Measure limits the contingent fee that a lawyer may charge to a client in a civil case to no more than: (1) 25% of the first $25,000 recovered by the client; and (2) 10% of any recovery by the client above $25,000. Measure does not limit ability of lawyer to be reimbursed for all costs and expenses incurred. Other provisions."

Tauman challenges the caption, the "yes" vote result statement, the "no" vote result statement, and the summary.

■ A ballot title caption must contain "not more than 15 words that reasonably identif[y] the subject matter of the state measure." ORS 250.035(2)(a). Tauman argues that the caption fails to comply with that standard because its use of the word "limits" is misleading. Specifically, Tauman argues that the word "limits" implies that there is currently no limit on the amount of fees that a lawyer can charge a client in a civil case. He contends that such limits do exist.

We agree with Tauman that existing legal rules impose limits on the amount of fees that a lawyer can charge. *See* ORPC 1.5(a) (lawyer may not charge illegal or clearly excessive fee); ORPC 1.5(c)(1) (lawyer may not charge certain contingent fees in domestic relations cases). We disagree, however, that the use of the word "limits" in the caption implies that no limit currently exists.

To "limit" is "to set bounds or limits to: confine." *Webster's Third New Int'l Dictionary* 1312 (unabridged ed 2002). A "limit," in turn, is "something that bounds, restrains, or confines[;] * * * a prescribed maximum or minimum amount, quantity, or number." *Id.* The use of the word "limits" accurately describes what the proposed measure would do; the measure, if enacted, would limit the amount of the contingent fee that a lawyer may charge a client in a civil case. The fact that other laws impose different limits does not mean that the proposed measure would not limit contingent fees.

Tauman relies on *Sizemore/Novick v. Myers*, 332 Or 352, 29 P3d 1108 (2001), for a contrary view; however, that decision does not support his position. The summary in *Sizemore/Novick* stated that "[c]urrent law * * * limits political activity on government time" and that the proposed measure "would prohibit" public employees from collecting money for political purposes while at work. *Id.* at 357. In the context of that ballot title, the words "limits" and "would prohibit" implied that public employees currently enjoyed a limited right to collect political contributions on the job—a proposition that was not accurate. *Id.* at 359-60. Unlike the use of the word "limits" in the ballot title at issue in *Sizemore/Novick*, the caption's use of "limits" in this ballot title is accurate.

■ Tauman also objects to the caption because it fails to state that the proposed measure's restrictions would apply only to lawyers for plaintiffs. Tauman recognizes that, by its terms, the measure applies to all lawyers. He argues, however, that the measure will affect only plaintiffs' lawyers and that the caption should reflect that effect. The Attorney General agrees that the proposed measure "would likely apply only to attorneys for plaintiffs." However, he argues that, because the measure is facially neutral, any reference to its effect on plaintiffs' lawyers would be an incomplete description of its terms. Alternatively, the Attorney General argues that, even if he could refer to the proposed measure's effect on plaintiffs' lawyers, he need not do so to substantially comply with ORS 250.035(2)(a).

The parties' dispute raises two separate issues. The first is whether the Attorney General may go beyond the terms of a measure to describe its effect. If he may, the second issue is whether that effect—that the measure will fall only on plaintiffs' lawyers—is part of the subject matter of the measure that the Attorney General must set out in the caption.

On the first issue, this court has explained that it will not speculate about the possible effects of a proposed measure. *See Nesbitt v. Myers*, 335 Or 567, 571-72, 73 P3d 925 (2003) (so stating); *Kain v. Myers*, 333 Or 446, 450-51, 41 P3d 416 (2002) (ballot title need not mention "conditional and conjectural" effects of proposed measure). The court has also recognized, however, that, when the effects of a measure are not reasonably subject to dispute, the Attorney General may (and sometimes must) go beyond the terms of the measure and mention those effects in the ballot title. *See Kain v. Myers*, 335 Or 228, 233-34, 64 P3d 1129 (2003) (requiring Attorney General to explain that general prohibition on payroll deductions for political purposes would affect unions).

In this case, the Attorney General does not dispute, and we agree, that a limitation on contingent fees will fall only on plaintiffs' lawyers, not on defense lawyers. The question that remains, however, is whether that effect is one that the Attorney General must mention in the caption. As noted, the caption must reasonably identify the "subject matter" of a

measure. In this case, the subject matter of the measure is limiting contingent fees. It is certainly true that the measure will affect one group of lawyers, and the Attorney General could have chosen to mention that fact in the caption. But we cannot say that the omission of that effect from the caption means that the caption does not reasonably identify the subject matter of the measure, at least as long as we review for substantial compliance with statutory standards. *See id.* at 233 (recognizing that caption could but need not refer to effect on unions of general limitation on public payroll deductions).

■ Tauman also challenges the "yes" and "no" vote result statements. ORS 250.035(2)(b) and (c) require two "simple and understandable statement[s] of not more than 25 words" that describe the result if a state measure is approved and if it is rejected. The intended ballot title provides:

> "RESULT OF 'YES' VOTE:   'Yes' vote limits contingent fee lawyer may charge in civil case: 25% of first $25,000 recovered, 10% of recovery above $25,000.

> "RESULT OF 'NO' VOTE:   'No' vote retains current law, placing no limitations on percentage of recovery in civil case that a lawyer can charge under a contingent fee agreement."

Tauman argues that the "yes" vote result statement fails to comply with ORS 250.035(2)(b) because its "excessive use of numbers and percentages * * * is extremely confusing." We disagree. The few numbers mentioned in the "yes" vote result statement are relatively straightforward and understandable. They convey, in an accurate manner, important information regarding the effect that the proposed measure, if adopted, would have. That suffices to achieve substantial compliance with ORS 250.035(2)(b). *See Novick / Crew v. Myers*, 337 Or 568, 574, 100 P3d 1064 (2004) ("yes" vote result statement should reflect a proposed measure's "most significant and immediate" consequences).

■ Tauman also argues that the "yes" vote result statement should refer to the fact that the measure will affect only plaintiffs' lawyers. We agree with Tauman that a significant consequence of this measure will be to limit the percentage of contingent fees that plaintiffs' lawyers can charge. *See id.* at

574 ("yes" vote result statement should reflect proposed measure's "most significant and immediate" consequences). Unlike the caption, the "yes" vote result statement should reflect that consequence. *See Kain*, 335 Or at 233-34 (concluding that "yes" vote result statement should include effect on unions of a general limitation on public employee payroll deductions).

■    Tauman argues that the "no" vote result statement inaccurately implies that current law places no limitation on the amount of contingent fees that a lawyer can charge. We agree that the "no" vote result statement conveys that implication. We also agree that the statement could mislead a voter. As noted, current law prohibits lawyers from charging illegal or clearly excessive fees. *See* ORPC 1.5(a) (lawyer may not charge illegal or clearly excessive fee). It is true, as the Attorney General argues, that the "no" vote result statement says that current law "plac[es] no limitations on *percentage* of recovery in civil case that a lawyer can charge under a contingent fee agreement" and that ORCP 1.5(a) does not limit contingent fees in terms of the percentage of any recovery. (Emphasis added.) But we think that the distinction the Attorney General draws is too fine. As Tauman argues, the "no" vote result statement implies that no limitation on contingent fees currently exists when limitations in fact do exist. *See Kain v. Myers*, 333 Or 75, 79, 38 P3d 266 (2001) (stating that "misstatements, even by implication, of either existing law or the law that the proposed measure would enact are not appropriate in a ballot title").

Finally, Tauman challenges the summary. ORS 250.035(2)(d) requires "[a] concise and impartial statement of not more than 125 words summarizing the state measure and its major effect." Tauman argues that the summary, like the "yes" vote result statement, must mention the measure's effect on plaintiffs' lawyers. Tauman also argues that the summary, like the "no" vote result statement, incorrectly implies that current law places no limitation on the amount of a contingency fee that a lawyer can charge. For the reasons stated above, both challenges are well taken.[1]

---

[1] We have considered the other challenges that Tauman makes to the ballot title and reject them without further discussion.

Ballot title referred to Attorney General for modification.