Submitted on the record December 7, 2006, ballot title referred to
Attorney General for modification March 23, modified ballot title certified
April 9, 2007 (342 Or 634)

Chip TERHUNE
& Larry Wolf,
*Petitioners,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S54287)

154 P3d 1284

Margaret S. Olney, of Smith, Diamond & Olney, Portland, filed the petition and reply memorandum for petitioners.

Anna M. Joyce, Assistant Attorney General, Salem, filed the answering memorandum for respondent.

GILLETTE, J.

Kistler, J., dissented and filed an opinion in which Linder, J., joined.

**GILLETTE, J.**

This ballot title review proceeding brought under ORS 250.085(2) concerns the Attorney General's certified ballot title for an initiative petition that the Secretary of State has denominated as Initiative Petition 50 (2008). Initiative Petition 50, if adopted, would add a section to Article XV of the Oregon Constitution that would grant a tax credit to parents "who directly spend money for educational expenses" as defined in the proposed measure equal "to the amount of their expenses." The amount so allowed would be "capped" (the measure's term) at $200 per child for calendar year 2009, $400 per child for calendar year 2010, and $600 per child for each calendar year thereafter. The legislature could increase the credit, but not decrease it. The legislature also could expand the list of educational expenses, but could not shorten it.

Petitioners are electors who timely submitted written comments to the Secretary of State concerning the content of the Attorney General's draft ballot title and who therefore are entitled to seek review in this court of the resulting certified ballot title. *See* ORS 250.085(2) (stating that requirement). We review the Attorney General's certified ballot title to determine whether it substantially complies with the requirements of ORS 250.035(2)(a) to (d). ORS 250.085(5). As we shall explain, we conclude that certain of petitioners' challenges are well taken, and we therefore refer the certified ballot title back to the Attorney General for revision. *See* ORS 250.085(8) (authorizing that disposition).

The proposed measure consists of eight subsections. The central provision is subsection 2, which provides, in part:

> "Parents who directly spend money for educational expenses listed in [subsection 5 of] this Section shall be granted an Oregon income tax credit equal to the amount of their expenses. The tax credit shall be capped at $200 per child for calendar year 2009; $400 per child for calendar year 2010; and $600 per child for calendar year 2011 and each subsequent calendar year."[1]

---

[1] Subsection 3 confirms what subsection 2 already states: The tax credit applies for "each child" of the taxpayer. Subsection 4 provides that "child" means

"Educational expenses" then are defined in subsection 5 as

"textbooks, transportation, activity fees, school uniforms, school activity uniforms, musical instruments, electronic devices used in a class or for homework, *tuition*, and registration fees."

(Emphasis added.) It is the proposed measure's authorization of a tax credit for tuition that lies at the heart of this case.

The Attorney General certified the following ballot title for Initiative Petition 50:

"AMENDS CONSTITUTION: PROVIDES STATE INCOME TAX CREDIT FOR EDUCATIONAL EXPENSES FOR CHILDREN ATTENDING KINDERGARTEN THROUGH HIGH SCHOOL

"RESULT OF 'YES' VOTE: 'Yes' vote provides state income tax credit for education expenses, including tuition, for children attending kindergarten through high school; reduces revenue available for state services.

"RESULT OF 'NO' VOTE: 'No' vote retains current law, which does not provide a state income tax credit for the educational expenses of children attending kindergarten through high school.

"SUMMARY: Amends constitution. Constitution currently contains no provisions relating to income tax credit for children's education expenses. Measure provides state income tax credit for educational expenses for children attending kindergarten through the 12th grade, children completing high school diploma equivalency. Tax credit is amount of expenses, up to $200 per child in 2009, increases to $600 by 2011. Applies to religious, private, public schools. Legislature may increase, not decrease, amount of tax credit. Parents claiming child as dependent and emancipated children not claimed as dependents are entitled to credit. Educational expenses defined as books, transportation, activity fees, uniforms, musical instruments, tuition, registration, electronic devices. Legislature may expand but not restrict qualified expenses list. Reduces revenue for state services; provides no replacement funds. Other provisions."

---

any person under 21 who is taking classes to complete grade levels from kindergarten through the twelfth grade.

Petitioners challenge the Attorney General's caption, "yes" vote result statement, and summary.

■     ORS 250.035(2)(a) requires that an Attorney General's certified ballot title contain a "caption of not more than 15 words that reasonably identifies the subject matter of the state measure."[2] This court reviews a challenge to a caption to determine whether the caption "substantially compl[ies]" with that requirement. ORS 250.085(5). *See also, e.g., Honeyman v. Myers*, 342 Or 126, 130-33, 149 P3d 1147 (2006) (illustrating process). The caption is the cornerstone of the ballot title; it must identify the proposed measure's subject matter in terms that will, *inter alia*, inform potential petition signers and voters of the sweep of the measure. *See, e.g., Dale v. Myers*, 328 Or 466, 469-71, 980 P2d 157 (1999) (caption required to mention payroll deductions, although such deductions never mentioned in proposed measure itself, because primary subject matter was deduction process).

■     In the present case, petitioners argue—and we agree—that the principal effect of the proposed measure (among other important effects) will be to allow tax credits for parochial and other private school tuition. That is true because, under the state's present public education system, parents ordinarily do not pay tuition. Thus, although all the other expenditures listed in the measure are likely to be made by all parents, the credit for "tuition" runs in favor of the parents of children in religious and other private schools. Moreover, tuition expenditures are almost invariably the largest educational expense of parents who send their children to those kinds of institutions. Such a public policy choice—whatever its merits—would represent a very significant change in Oregon law, both by reducing the general fund by the collective total of the tax credits and by facilitating parents' desire to enroll their children, with the aid of public tax dollars, in parochial and other private schools. Those facts make the subject matter of the measure not merely a "tax credit." It is, instead, a tax credit aimed most specifically

---

[2] When, as here, the proposed measure would amend the Oregon Constitution, the caption may contain two additional words, *viz.*, "amends constitution." Those words appear in the Attorney General's caption for Initiative Measure 50.

at lessening the tuition burden of those who choose to send their children to parochial or other private schools.

The Attorney General's caption blandly refers to a "tax credit for educational expenses." That may be accurate, but it hardly can be said to note, much less highlight, the actual major effect of the proposed measure. The caption must reflect specifically the proposed tuition offset aspect, as discussed above, if that is possible within the 15-word limit provided in ORS 250.035(2)(a). We believe that it is possible and therefore hold that the Attorney General's certified caption fails to comply substantially with the requirements of ORS 250.035(2)(a). We must refer the ballot title to the Attorney General for revision.

■ Petitioners challenge the Attorney General's "yes" result statement on the same ground that they advance respecting the caption, and we again agree that a modification is required. The "yes" result statement does mention "tuition," but again says nothing about who benefits from a tax credit for that expenditure. The Attorney General's certified ballot title is referred to the Attorney General for revision in that respect as well.

■ Finally, petitioners challenge the Attorney General's summary, arguing that the summary must include a description of Article I, section 5, of the Oregon Constitution,[3] to give prospective petition signers and voters perspective as to the policy choice they are being asked to make. We agree with the Attorney General that he was not required to include that material in his summary. We do note that, on remand, he is free to further consider the question and include that material, if he so chooses.

Ballot title referred to the Attorney General for modification.

**KISTLER, J.,** dissenting.

The ballot title in this case accurately describes the terms of the proposed measure. The majority holds, however,

---

[3] Article I, section 5, of the Oregon Constitution provides, in part:

"No money shall be drawn from the Treasury for the benefit of any relig[i]ous, or theological institution * * *."

that the ballot title is deficient. It reasons that the Attorney General should have gone beyond accurately describing the terms of the measure and "highlight[ed]" the measure's "actual major effect," which the majority perceives is lowering "the tuition burden of those [parents] who choose to send their children to parochial or other private schools." In my view, the factual assumptions that underlie the majority's holding are reasonably subject to dispute. Even if the Attorney General could have chosen to "highlight" the effect on tuition for religious and other private schools, a proposition that is far from clear, his decision not to do so substantially complies with his statutory obligation to describe the measure and its effects. Because I would certify the ballot title, I respectfully dissent.

The proposed measure, if enacted, would add a section to the Oregon Constitution granting a tax credit to parents for their children's educational expenses without regard to whether the child attends a public or a private school. The measure caps the amount of the tax credit at $200 per child in 2009, $400 per child in 2010, and $600 per child thereafter; it also allows the legislature to increase the cap. The measure defines educational expenses as the cost of "textbooks, transportation, activity fees, school uniforms, school activity uniforms, musical instruments, electronic devices used in a class or for homework, tuition, and registration fees." The legislature may expand the list of covered expenses but not narrow it.

The majority's holding rests on the proposition that "the principal effect of the proposed measure" is "to allow tax credits for parochial and other private school tuition." It bases that proposition on two premises. The majority notes initially that, "because, under the state's public education system, parents ordinarily do not pay tuition. * * * the credit for 'tuition' runs in favor of the parents of children in religious and other private schools." The majority then observes that, because "tuition expenditures are almost invariably the largest educational expense" for parents whose children attend private school, the "principal" or "actual major effect" of the measure is to subsidize the tuition costs of children attending private schools.

The factual premises on which the majority's holding rests are flawed. As the majority recognizes, children who attend public schools may pay tuition either to attend public school in another district or to participate, within their district, in educational programs, such as driver's education, that are not part of the regular school program. *See* ORS 339.115(1) (district may charge tuition to nonresident students); ORS 339.141(2) (district may charge tuition to resident students for certain educational programs). The majority concludes, however, that a tax credit for tuition will "ru[n] in favor of the parents of children in religious and other private schools" presumably because it assumes that more parents will pay tuition for their children to attend private school than will pay tuition for their children either to attend a public school outside their district or to take courses, such as driver's education, within their district.

The factual assumption underlying the majority's conclusion may be correct or it may not. The difficulty, however, is that we have no record or other information before us that would permit us to determine whether that assumption is accurate. Without that information, the majority has no reliable basis for saying that more parents will pay tuition for their children to attend private school than will pay tuition for their children either to attend public schools in other districts or to take certain public school courses, such as driver's education. At a minimum, the Attorney General reasonably could choose to avoid the factual speculation on which the majority's decision rests and describe, as he did, the terms of the measure neutrally and accurately.

The factual premises underlying the majority's decision are flawed in a second, more substantial respect: the majority's decision never accounts for the effect of the cap on the tax credit. The proposed measure gives parents a tax credit for a variety of educational expenses but caps the credit at $200, $400, and $600 respectively for the 2009, 2010, and 2011 tax years. In identifying the "actual major effect" of the proposed measure, the majority focuses on the credit for tuition and discounts the credit for every other educational expense because "tuition expenditures are almost invariably the largest educational expense of parents who send their children to [private schools]."

The majority may be correct that, without a cap, the money that a parent will spend per child on private school tuition typically will exceed the money that a parent will spend per child on the other educational expenses for which the tax credit is available. The cap, however, limits the size of the available credit. Even if private school tuition ordinarily exceeds the other educational expenses borne by parents of public school children, that proportional difference is not relevant if the expenses paid by parents of public school children approach or exceed the cap on the tax credit that all parents may claim under the measure. In those circumstances, the parents of public school children will reap benefits from the measure roughly equal to those reaped by parents of private school children. The distinction that the majority believes to be the principal effect of the measure will not exist.

It may be that, as the cap on the tax credit increases from $200 to $600, a greater percentage of the credit will be used for tuition than for other educational expenditures. However, we have no factual basis for saying how much parents of public school children pay for musical instruments, athletic fees, or computers "used in a class or for homework" or how many parents pay those expenses. *See* Initiative Petition 51 § 5 (listing expenses subject to tax credit); ORS 336.183 (authorizing public schools to charge fees for before- and after-school programs); ORS 339.155 (authorizing public schools to charge fees for certain programs, activities, uniforms, towels, and musical instruments). The majority thus has no basis, other than its intuitive sense of the matter, for knowing whether the average cost of those expenses per child would consume or be less than the available tax credit.

More significantly, even if the average cost per child for private school tuition would consume the entire tax credit while the average cost for other educational expenses would not, we have no basis on this record for knowing whether the aggregate tax credits for private school tuition would exceed the aggregate tax credits for the other educational expenses. An example will illustrate the problem with the majority's analysis. Assume that 10,000 parents receive a $600 tax credit per child for private school tuition while 100,000 parents receive a $150 tax credit per child for other types of educational expenses. Even though the average tax credit for private school tuition would exceed the average tax credit for

other educational expenses, the aggregate tax credit for other educational expenses would far exceed the aggregate tax credit for private school tuition, calling into question the principal or actual major effect of the measure that the majority perceives.

Given that uncertainty, I would be hesitant to posit, as the majority does, that the principal effect of the proposed measure "will be to allow tax credits for parochial and other private school tuition." *See Nesbitt v. Myers*, 335 Or 567, 572, 73 P3d 925 (2003) (stating that court should not engage in "speculation" or "an inappropriate factual investigation"); *Kain v. Myers*, 333 Or 446, 451, 41 P3d 416 (2002) (ballot title need not mention "conditional and conjectural" effects of measure). The degree to which parents would use the tax credit for tuition expenses (whether for public or private schools) as opposed to other educational expenses is far from clear. It may be that the majority's intuitive sense will prove correct, or the variables might be greater than the majority foresees. But it is precisely that uncertainty that, in my view, counsels against the requirement that the majority would impose on the Attorney General in this case. *See Pelikan / Tauman v. Myers*, 342 Or 383, 389, 153 P3d 117 (2007) (explaining that Attorney General may go beyond terms of ballot measure only when the effect of the measure is not reasonably subject to dispute).

At a minimum, I would not hold, as the majority does, that a caption that does not highlight tuition for "parochial and other private school[s]" fails to substantially comply with the Attorney General's statutory obligation to describe the subject matter and major effect of the measure. Even if it were permissible for the Attorney General to include that information in the caption, he legitimately could choose to avoid the uncertainty that the majority embraces; that is, the Attorney General legitimately could choose to write a neutral ballot title that accurately describes the measure's terms, leaving it to the advocates and opponents of the measure to debate its effects. Because I would certify the Attorney General's ballot title, I respectfully dissent.

Linder, J., joins in this dissenting opinion.