On petitions to review ballot title filed August 10; considered and under advisement on October 14, ballot title referred to Attorney General for modification November 27, modified ballot title certified December 14, 2009 (347 Or 448)

Wayne BRADY,
Ross Day, Duane Fletchall,
and Russell Walker,
*Petitioners,*

*v.*

John R. KROGER,
Attorney General,
State of Oregon,
*Respondent.*

(SC S057675 (Control))

Meagan FLYNN,
*Petitioner,*

*v.*

John R. KROGER,
Attorney General,
State of Oregon,
*Respondent.*

(SC S057680)

(Cases Consolidated)

221 P3d 151

Sarah Hunt Vasche, Oregon Anti-Crime Alliance, Salem, and Ross A. Day, Common Sense for Oregon, Salem, filed the petition for petitioners, Brady, Day, Fletchall, and Walker.

James S. Coon, of Swanson, Thomas & Coon, Portland, filed the petition for petitioner Flynn.

Jeff J. Payne, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With him on the memorandum were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

GILLETTE, J.

## GILLETTE, J.

■ This ballot title review proceeding brought under ORS 250.085(2) concerns the Attorney General's certified ballot title for a proposed initiative measure, denominated by the Secretary of State as Initiative Petition 44 (2010). Petitioners submitted timely written comments to the Secretary of State concerning the content of the Attorney General's draft ballot title and are entitled to seek review of the resulting certified ballot title in this court. *See* ORS 250.085(2) (stating that requirement). We review the Attorney General's certified ballot title to determine whether it substantially complies with the requirements of ORS 250.035(2)(a) to (d). ORS 250.085(5). For the reasons that follow, we conclude that the Attorney General's certified ballot title does not conform to certain of those statutory standards. We therefore refer the matter to the Attorney General for modification.

The proposed measure contains five sections. The first is a preamble that asserts that the purpose of the measure is to

"guarantee every person the right to be secure in his or her home or business without having to retreat from any intruder, and to ensure the peaceful enjoyment of land without concern as to trespassers * * *."

The next two sections contain the heart of the proposed measure's substantive modifications of Oregon law. We set them out in full:

"Section 2. An owner of any land is not liable for any injury, death or other damage suffered by a trespasser on the land where such injury, death, or other damage is caused by any condition of the land or its fixtures. The only exception to this section is the following: this section does not protect an owner from liability for placing a spring gun, or other device, which is placed intentionally for the purpose of injuring a person.

"Section 3. Any resident who uses any form of physical force, including deadly physical force, against an intruder is presumed to have reasonably believed that the intruder was using or about to use unlawful deadly physical force against any resident on the premises, such that the resident who uses such physical force was justified, based on

self-defense or defense of a third person, and therefore not subject to any civil or criminal liability for use of such physical force."

Section 4 of the proposed measure contains definitions that are central to understanding Sections 2 and 3. "Intruder," a word not otherwise used or defined in Oregon law, is defined in Section 4(a) as

> "a person who is committing criminal trespass in the first degree (as defined in ORS 164.255), burglary in the first degree (as defined in ORS 164.225), or burglary in the second degree (as defined in ORS 164.215)."

"Owner" is defined broadly in Section 4(c) as a person having "any interest" in any land, and includes "a tenant, lessee, occupant or other person in possession of the land." In addition, Section 4(e) defines "trespasser" as "any person who unlawfully enters or remains on the land." The final section of the proposed measure, Section 5, states that it "does not create or expand any liability either directly or by implication."

The proposed measure is aimed at extensively altering both the civil and criminal bases for imposing liability on a person who owns or is lawfully in possession of land. On the civil side, Section 2 purports to immunize an "owner" from liability for "any" injury, death or other damage suffered by a "trespasser." The only exception to the rule is one for intentionally placing on the land a device intended to injure a person. Thus, under the proposed measure, an owner is not liable for, among other things, injury or death caused by either obvious or hidden dangers on the land, including attractive nuisances. The immunity created by Section 2 makes no distinction among victims, either by age or any other characteristic, as long as the injured party is a "trespasser," *i.e.*, someone who either enters or remains on the land unlawfully. Finally, Section 3—although focused primarily on criminal law—further specifically protects any "resident," *i.e.*, "any person who is lawfully present in a building or dwelling," from civil liability for the use of force, including deadly force, against an "intruder."

On the criminal side, Section 3 creates a presumptive defense to a criminal charge, such as assault, homicide,

or other crime involving personal injury or death, for any "resident" "who uses any form of physical force, including deadly physical force," against an "intruder." As noted, a "resident" is anyone "lawfully present in a building or dwelling"—a characteristic of, among others, social guests and business invitees. The statute does not affirmatively require that there be any proportionality between the "intruder['s]" acts and the nature or extent of the "resident['s]" responsive use of force.[1] Section 3 thus would make significant (although, at this juncture, not quantifiable) alterations to existing laws respecting "justification" for the use of physical force, including deadly physical force, in circumstances that otherwise would make such use of force criminal. *See generally* ORS 161.190 to 161.229 (respecting justified uses of physical force by private citizens).

The Attorney General certified the following ballot title for Initiative Petition 44 (2010):

"EXPANDS LAWS ALLOWING DEFENSIVE USE OF DEADLY FORCE; ELIMINATES LIABILITY FOR CHILD TRESPASSER'S INJURY/DEATH

"Result of 'Yes' Vote: 'Yes' vote presumes 'resident' (defined) justifiably uses deadly force against 'intruder' (defined) who is not using physical force; eliminates liability for child trespasser's injury/death.

"Result of 'No' Vote: 'No' vote retains laws allowing: defensive use of deadly force only if defender reasonably perceives threat of deadly force, liability for certain trespassers' injury/death.

"Summary: Current law allows deadly force in defense of self, others, or property only if other person is using or about to use deadly force. Measure creates presumption that 'resident' (defined) lawfully used deadly force against 'intruder' (defined) because resident reasonably believed 'intruder' was using or about to use deadly force; creates presumption that deadly force is justified even if 'intruder' is not using or threatening to use force. Currently, landowner may be liable to child trespassers injured by artificial

---

[1] The "intruder" must be one who is committing criminal trespass in the first degree or burglary in the first or second degree, but none of those crimes inherently requires that the actor use any degree of physical force against anyone.

condition of land, or liable to adult trespassers that landowner injures willfully or wantonly. Measure provides that 'owner' (defined) is not liable for injury to child or adult trespasser caused by any condition of land or fixtures; exception for device(s) intended to injure persons. Other provisions."

We turn to consider the petitioners' challenges to the Attorney General's certified ballot title. In doing so, we first address the challenges advanced by Brady petitioners, because they were the first to be filed. We then consider the challenge advanced by petitioner Flynn.

Brady petitioners challenge all four parts of the Attorney General's certified ballot title, *viz.*, the caption, the "yes" result statement, the "no" result statement, and the summary. We address their challenges in that order.

■ ORS 250.035(2)(a) requires that a certified ballot title contain "a caption of not more than 15 words that reasonably identifies the subject matter of the state measure." The caption must identify the proposed measure's subject "accurately and in terms that will not confuse or mislead potential petition signers [or] voters." *Greene v. Kulongoski*, 322 Or 169, 174-75, 903 P2d 366 (1995).

■ Brady petitioners first argue that the caption misstates current law regarding the potential liability of possessors of land. As noted, the Attorney General's caption states that the proposed measure "eliminates liability for child trespasser's injury/death." Brady petitioners object to that statement as underinclusive. The measure, Brady petitioners argue, sweeps more broadly than the liability of landowners or land possessors toward trespassing children. They assert that

"[t]he addition of the word 'child' in the caption and resulting statements, to the exclusion of the mention of other trespassers, misleads voters. It creates a false belief that under current law, possessors [of land] are not liable to adult trespassers in negligence under any circumstances."

Brady petitioners also assert that the use of the word "child," both in the caption and elsewhere in the ballot title, will prejudice voters against the proposed measure.

The Attorney General's response to Brady petitioners' arguments on those points consists, first, of an assertion that a landowner owes only a limited duty of care to an adult trespasser and, second, that use of the word "child" is not so inflammatory as to create an antipathy in the minds of voters toward the proposed measure.

■ ■ We disagree with the Attorney General on both points. First, and most importantly, we know of no present statute or case law that so fully exempts landowners and land occupiers from liability toward adult trespassers as this measure would do. That necessarily means that our reading of the case law differs somewhat from the Attorney General's summary of it. *Rich v. Tite-Knot Pine Mill*, 245 Or 185, 191, 421 P2d 370 (1966) is the leading case on the subject and often is cited for the basic rule that "[e]xcept for situations not relevant here, the possessor [of land] is not liable for injuries to trespassers caused by his failure to exercise reasonable care to put his premises in a safe condition."[2] But that rule was qualified in the earlier opinion on which *Rich* relied, *Hansen v. Cohen et al*, 203 Or 157, 165, 276 P2d 391 (1955): "In this state we have consistently held that as to a trespasser * * * there can be no liability against the owner of the premises unless the injury was brought about *by wanton or willful negligence*." (Emphasis added.) Thus, it would appear that, under present Oregon law, even with respect to adult trespassers, wanton and willful conduct that makes a condition of the land or its fixtures dangerous and thereby leads to injury can be actionable. According to its wording, the proposed measure would, with one very narrow exception, sweep away that responsibility for wanton or willful conduct as well as for intentional acts. That is an important change.

■ It is true that, as the Attorney General argues, Oregon courts have stated, in various cases, that landowners do in fact have a special duty to children, as set forth in *Restatement (Second) of Torts* § 339 (1974):

---

[2] The court defined "trespasser" as "one who enters or remains on premises in the possession of another without a privilege to do so, created by the possessor's consent or otherwise."

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a)   the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b)   the condition is one of which the possessor knows or has reason to know * * * will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c)   the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it * * *, and

"(d)   the utility to the possessor of maintaining the condition and burden of eliminating the danger are slight as compared with the risk to the children involved, and

"(e)   the possessor fails to exercise reasonable care to eliminate the danger or otherwise protect the children."

*See Pocholec v. Giustina,* 224 Or 245, 252, 355 P2d 1104 (1960) (summarizing and adopting *Restatement (Second) of Torts* § 339); *Karabolis v. Liebert,* 263 Or 64, 69, 501 P2d 315 (1972) (stating that court embraced the *Restatement* rule). However, in *Loney v. McPhillips,* 268 Or 378, 384, 521 P2d 340 (1974), this court declined to extend that principle to make landowners liable for physical harm to trespassing children caused by *natural* conditions on the land. Thus, there is at present significant immunity for landowners toward trespassing children.

■   The foregoing summary demonstrates that the Attorney General's decision to focus a potential voter's attention entirely on the effect of the proposed measure on trespassing children is incorrect. As this court has noted, if the Attorney General "chooses to describe the subject matter of a proposed measure by listing some of its effects, he runs the risk that the caption will be underinclusive and thus inaccurate." *Towers v. Myers,* 341 Or 357, 361, 142 P3d 1040 (2006). That has been the result here. The proposed measure speaks to all trespassers, regardless of age, and to various states of mind of the landowner or occupier. So should the ballot title.

Its failure to do so means that it does not substantially comply with the requirements of ORS 250.035(2)(a), and it must be modified.

The Attorney General's "yes" vote result statement suffers from the same inappropriate focus on "child trespasser[ ]s" that mars the caption. The "yes" vote result statement must be modified. Brady petitioners also argue that the "yes" vote result statement is flawed in another respect, to which we now turn.

■ The Attorney General's "yes" vote result statement states that a "yes" vote "presumes 'resident' (defined) justifiably uses deadly force against 'intruder' (defined) who is not using physical force[.]" Brady petitioners point out that the foregoing statement, while correct as far as it goes, is incomplete: The proposed measure presumes that use of deadly force by a "resident" is justified, whether an "intruder" is using some degree of physical force or is using none at all. The Attorney General's "yes" vote result statement thus is underinclusive, Brady petitioners argue, and unduly emphasizes the extreme circumstance (deadly force against none), when it would be more accurate to portray a continuum.

■ Again, we agree with Brady petitioners. Under present law, the use of force by a person is justified only if the degree of force used by the person is necessary to prevent or terminate some harm or is proportional to the force either used or threatened by another person. *See, e.g.*, ORS 161.209 (defense of justification for use of physical force that the person "reasonably believes to be necessary for the purpose"); ORS 161.219(3) (use of deadly physical force justified under certain circumstances, including reasonable belief that another person is "[u]sing or about to use unlawful deadly physical force against a person"); ORS 161.225 (use of physical force in defense of premises is justified when, and *to the extent*, that person reasonably believes it necessary to prevent or terminate criminal trespass). The Attorney General's "yes" vote result statement fails to recognize that scope of present law and, because it fails to do so, it focuses only on a selected part of the effect that a "yes" vote would have in changing that law. For this reason, too, the Attorney General's "yes" vote result statement fails to substantially

comply with the requirements of ORS 250.035(2)(b) and must be referred for modification.[3] *See Pelikan / Tauman v. Myers,* 342 Or 383, 390-92, 153 P3d 117 (2007) (referring ballot title for modification under comparable circumstances).

■        Brady petitioners argue that the Attorney General's "no" vote result statement is flawed for the same reasons that the caption and "yes" vote result statement are flawed. We do not find, however, that the "no" vote result statement suffers from either of those flaws. The Attorney General's "no" vote result statement substantially complies with the requirements of ORS 250.035(2)(c), although the Attorney General retains authority on referral to modify it to, for example, improve its readability.

■        Brady petitioners argue that the Attorney General's summary suffers from the same defects that we have identified in the caption and "yes" vote result statement. We agree in part. With respect to a landowner's liability to trespassers, the Attorney General's summary, by making use of the greater number of words that may be included in the summary, provides a more comprehensive overview both of present law and of the proposed measure's impact on that law. The summary substantially complies with the requirements of ORS 250.035(2)(d) in that respect. However, with respect to the summary's description of a "resident['s]" right to use deadly force against an "intruder," the scope of the description again is too narrow: The summary states that the right applies "even if 'intruder' is not using or threatening to use force." That description is underinclusive. The right more correctly applies *whether or not* the "intruder" is using or threatening to use force. On referral, the Attorney General must modify his summary.

---

[3] A fully correct statement would inform a potential voter that a "yes" vote presumes that a "resident" (defined) justifiably uses force, including deadly physical force, against an "intruder" (defined), whether or not the intruder actually is using or threatening to use any degree of physical force, including deadly physical force. Obviously, there is no room within the 25-word limit set by ORS 250.035(2)(b) for "yes" vote result statements to include all of that statement, along with information that a "yes" vote "eliminates liability for child trespasser's injury/death." However, we believe that the central idea can be encapsulated within the limit. We offer the following example by way of illustration (but not as a requirement): " 'Yes' vote presumes 'resident' (defined) justifiably uses deadly force against 'intruder' (defined), whether or not intruder uses force."

■    Petitioner Flynn asserts that the Attorney General's caption does not substantially comply with the requirements of ORS 250.035(2)(a), because it includes the phrase "defensive * * * force" in the caption. Flynn asserts that use of that phrase is inaccurate and misleading.

For the convenience of the reader, we set out the Attorney General's caption once again:

"EXPANDS LAWS ALLOWING DEFENSIVE USE OF DEADLY FORCE; ELIMINATES LIABILITY FOR CHILD TRESPASSER'S INJURY/DEATH"

Petitioner Flynn argues that "the use of the phrase 'defensive [* * *] force' is misleading, [because it implies] that someone must be under physical attack in order to be justified in using deadly force."

■    Pursuant to ORS 250.035(2)(a), the Attorney General's task is to identify the "subject matter" of a proposed measure. Put differently, the Attorney General's task is to "highlight[ ] the actual major effect" of the measure. *Terhune v. Myers*, 342 Or 475, 480, 154 P3d 1284 (2007). Although that task sometimes is simple, this is not such a case. As the Attorney General has attempted to make clear, the subject matter of this proposed measure encompasses two different aspects of property ownership, *viz.*, (1) liability for injury to trespassers and (2) the use of force, including deadly force, to defend the property and those permissibly upon it without incurring criminal liability. In *Terhune* terms, there is more than one "actual major effect." But is Flynn correct in asserting that the Attorney General misstates one such major effect of the proposed measure by referring to its authorization of the "defensive" use of deadly physical force?

We think not. The focus of Section 3 is on the use of deadly force to respond to three crimes (burglary in the first and second degree, and criminal trespass), all of which include a trespass. It is the trespassory act that makes the use of deadly force in response to trespassers presumptively permissible. So understood, the section is about using deadly force to repel a trespasser, and we cannot say that calling

such action "defensive" is incorrect. We therefore do not find Flynn's challenge to the caption to be well taken.[4]

We hold that, for the reasons stated, the Attorney General's caption, "yes" vote result statement, and summary in his certified ballot title for Initiative Measure 44 (2010) fail to substantially comply with the requirements of ORS 250.035(2)(a), (b), and (d). Accordingly, the ballot title is referred to the Attorney General for modification.

The ballot title is referred to the Attorney General for modification.

---

[4] Petitioner Flynn also challenges the Attorney General's "yes" vote result statement, but that challenge depends on her succeeding in her challenge to the caption. We therefore also reject her challenge to the "yes" vote result statement.