On petition to review ballot title filed March 10, considered and under advisement March 31, ballot title referred to Attorney General for modification April 29, 2010

Doug WHITSETT,
an individual Oregon Elector,
*Petitioner,*

*v.*

John R. KROGER,
Attorney General,
State of Oregon,
*Respondent.*

(SC S058313)

230 P3d 545

Nathan R. Rietmann, Salem, filed the petition and reply memorandum for petitioner.

Stephanie L. Striffler, Senior Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the memorandum were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

GILLETTE, J.

## GILLETTE, J.

This is a proceeding to review the ballot title for Senate Joint Resolution (SJR) 48, a measure referred to the people by the Legislative Assembly. *See* Or Const, Art IV, § 1(3)(c) (authorizing such referrals). Pursuant to ORS 250.075, the Legislative Assembly drafted its own ballot title for the referred measure. Such ballot titles are reviewable by this court on the petition of "[a]ny elector dissatisfied with [the] ballot title." ORS 250.085(1). Petitioner, an elector, challenges each part of the ballot title—the caption, the "yes" and "no" vote result statements, and the summary. For the reasons that follow, we conclude that some of petitioner's challenges to each part of the ballot title are well taken. We therefore refer the ballot title to the Attorney General for modification.

■ SJR 48 is a constitutional amendment that would add a new Article, denominated Article XI-P, to the Oregon Constitution. The complete wording of the referred measure is attached to this opinion as an appendix. For the purposes of our review, however, it is possible to abbreviate our description of SJR 48 to the following: Article XI, section 7, of the Oregon Constitution prohibits the state from pledging the full faith and credit of the state to secure indebtedness incurred by the state in an amount in excess of $50,000. Over the years, the voters have amended Article XI, section 7, on 17 separate occasions to permit the state to pledge its full faith and credit in support of bonds for particular purposes. Or Const, Arts XI-A through XI-O. SJR 48 would create an additional exception to the limit imposed by Article XI, section 7, by permitting the Legislative Assembly to authorize the state to incur certain kinds of indebtedness, the repayment of which would be backed by the full faith and credit of the state. Such indebtedness could be used to finance or refinance the costs of "acquiring, constructing, remodeling, repairing, equipping or furnishing real or personal property that is or will be owned or operated" by the state. SJR 48, §§ 1(1), (2). The indebtedness incurred pursuant to SJR 48 could not exceed one percent of the real market value "of the property in this state." *Id.* § 2(1). Any indebtedness would

have to be paid from income tax revenues; the measure forbids repaying any obligation incurred pursuant to the measure from property taxes. *Id.* § 2(2).

The Legislative Assembly created the following ballot title for SJR 48:

## "AMENDS CONSTITUTION: AUTHORIZES LOWEST-COST BORROWING FOR STATE'S REAL AND PERSONAL PROPERTY PROJECTS

"**RESULT OF 'YES' VOTE:** 'Yes' vote authorizes lowest-cost bonds to finance state owned or operated real and personal property projects. Prohibits property tax for repayment. Limits amount borrowed.

"**RESULT OF 'NO' VOTE:** 'No' vote rejects authorization for state to issue lowest-cost general obligation bonds for real and personal property projects owned or operated by the state.

"**SUMMARY:** The measure amends the Oregon Constitution to authorize the state to issue general obligation bonds to finance acquisition, construction, remodeling, repair, equipping or furnishing of state owned or operated property. General obligation bonds are the cheapest method of borrowing the state may use and would cost less than the certificates of participation the state currently uses. The bonds would save an estimated $5 million on interest costs for each $100 million issued. The measure does not authorize any specific bonds, but authorizes the Legislative Assembly to enact implementing legislation. The measure prohibits the levy of property taxes to repay the bonds and limits the amount of outstanding bonds to one percent of the real market value of property in the state."[1]

We turn to a discussion of each of petitioner's challenges to the title, beginning with his challenges to the caption.

■ ■ A ballot title caption for a proposed constitutional amendment must begin with the words "Amends Constitution," followed by a statement of not more than 15 words that reasonably identifies the subject matter of the measure. ORS 250.035(2)(a).[2] This court's role in reviewing challenges to a

---

[1] The ballot title was prescribed by the Legislative Assembly in section 21 of enrolled Senate Bill 998 (2010). Or Laws 2010, ch 21, § 21.

[2] Section 21(2) of enrolled Senate Bill 998 (2010) provides that "the word limits described in ORS 250.035(2) do not apply for the purposes of judicial review." Or

ballot title caption is to determine whether the caption substantially complies with the pertinent statutory requirements. ORS 250.085(5). To meet the applicable statutory standard, case law requires that the caption "state or describe the proposed measure's subject matter 'accurately and in terms that will not confuse or mislead potential petition signers and voters.'" *Kain / Waller v. Myers*, 337 Or 36, 40, 93 P3d 62 (2004), *quoting Greene v. Kulongoski*, 322 Or 169, 174-75, 903 P2d 366 (1995). By "subject matter," we refer to the "actual major effect" of a measure or, if the measure has more than one major effect, all such effects (to the limit of the available words). *See, e.g., Terhune v. Myers*, 342 Or 475, 480, 154 P3d 1284 (2007) (so holding).

In this case, the referred measure's authorization of new indebtedness is a major effect, as the caption recognizes. However, there is another, equally important effect that the caption does not mention. The first substantive sentence of the referred measure includes the qualification, "notwithstanding the limitations contained in section 7, Article XI[,] of th[e Oregon] Constitution." The proposed measure would supersede that "limitation"; it therefore is pertinent to inquire what the limitation entails.

Article XI, section 7, of the Oregon Constitution provides, in part:

> "The Legislative Assembly shall not lend the credit of the state nor in any manner create any debt or liabilities which shall singly or in the aggregate with previous debts or liabilities exceed the sum of fifty thousand dollars, except in case of war or to repel invasion or suppress insurrection or to build and maintain permanent roads; and the Legislative Assembly shall not lend the credit of the state nor in any manner create any debts or liabilities to build and maintain permanent roads which shall singly or in the aggregate with previous debts or liabilities incurred for that purpose exceed one percent of the true cash value of all the property of the state taxed on an ad valorem basis; and every contract of indebtedness entered into or assumed by

Laws 2010, ch 21, § 21(2). The legislature nonetheless appears to have endeavored to keep the number of words in each section of its ballot title within the statutory limitation. In every other respect, moreover, the requirements of ORS 250.035(2) apply.

or on behalf of the state in violation of the provisions of this section shall be void and of no effect. * * *."

In all pertinent respects, that provision has been a part of the Oregon Constitution since statehood. We have described the purpose and effect of the foregoing debt limitation provision this way:

> "The debates on the floor of the convention left little doubt as to the purpose of the debt limitation. The central concern was that future generations should not be saddled with the excessive undertakings of an imprudent legislature. The debt limitation was therefore adopted to protect against burdensome and excessive taxation. It was intended to prevent exposing the sources of public revenue to potential hazard. Long-term obligations create a fixed charge against future revenues and can impair the flexibility of planning and the ability of future legislatures to avoid a tax increase."

*State ex rel Kane v. Goldschmidt*, 308 Or 573, 580, 783 P2d 988 (1989) (footnote, internal quotation marks, and citations omitted). Petitioner argues that, correctly understood, it is "[t]he superseding of the existing constitutional debt limitation" that is the subject of the referred measure. Yet, petitioner points out, that concept appears nowhere in the present caption. It follows, petitioner reasons, that the caption is deficient.

It is this court's practice to require that a ballot title caption for a measure like the one before us inform prospective voters of the "substantive change" in existing law that the measure will make. *See, e.g., Meyer v. Myers*, 343 Or 399, 407, 171 P3d 937 (2007) (so requiring); *Kain / Waller*, 337 Or at 40 (subject matter of proposed measure includes scope of legal changes proposed measure would enact). The Attorney General acknowledges the foregoing authorities, but argues that the practice has not been uniform. He points to *Anderson v. Thornton*, 250 Or 185, 441 P2d 240 (1968), a case involving an initiated constitutional amendment in which this court did not require that the ballot title caption contain a statement about the substantive change in existing law that the proposed measure would make. However, that case was one in which no side argued that such a statement

should appear; it therefore is not one in which this court affirmatively concluded that no such statement was necessary. When the issue has been before us, we have followed the rule stated in *Meyer*.

This is such a case, and petitioner's argument is well taken. The referred measure, if adopted, would alter state borrowing practices in a way that would impact the ability of future legislatures to utilize tax revenues to deal with new fiscal and policy problems. That policy choice may or may not be an appropriate one, but it certainly is one that must be acknowledged. The present ballot title does not do that. The ballot title must be referred to the Attorney General to remedy the omission.

■ Petitioner also argues that the caption is deficient in another respect. He asserts that the use in the caption of the phrase "lowest-cost borrowing" is inappropriate, because it is misleading and confusing. That argument has several subparts.

First, petitioner argues that the use of the phrase "lowest-cost borrowing" is misleading because (petitioner asserts) the phrase has no frame of reference or point of comparison. For example, he argues, the use of "lowest-cost" to modify "borrowing" in the caption will lead a prospective voter to conclude that the referred measure authorizes borrowing that has a lower cost than all other forms of borrowing. That conclusion, petitioner reasons, then will cause a prospective voter to believe that the referred measure creates some kind of process by which the state will "shop around or otherwise price compare" various borrowing alternatives and select the "lowest-cost" one when, in fact, the referred measure creates no such process. From that, petitioner contends that the phrase in question is misleading.

The simplest answer to the foregoing argument is that it requires far too much speculation on our part to be valid. It may be that some voters will reason in precisely the way that petitioner postulates—a capacity to misread or misunderstand is inherent in any human enterprise. But we see

no basis for reaching that conclusion other than by speculating, and we shall not do that. There being no persuasive demonstration of a problem, we decline to direct the Attorney General to cure it.

Petitioner next argues that the modifier "lowest-cost" itself is misleading, "because it gives rise to an unanswered question: for whom is the borrowing authorized by SJR 48 at lowest-cost?" With respect, we do not see any ambiguity—the borrowing authorized by SJR 48 is borrowing authority granted to the state. It follows, we think, that the "lowest-cost" phrase refers to the cost to the state of that borrowing.[3]

Finally, petitioner asserts that the use of the term "borrowing" is misleading, because the term is broader and different than the constitutional term "debt." As a result, petitioner reasons, potential voters will infer "that SJR 48 authorizes an array of 'lowest-cost' financing arrangements that do not involve the incurring of debt or indebtedness in the constitutional sense." We are not persuaded that a logical path leads the way that petitioner points, but, in any event, we believe that the modified ballot title caption that the Attorney General creates on referral of this matter will make even clearer that the "borrowing" the caption refers to is borrowing that will create a "debt" of the state that would run afoul of the restriction in Article XI, section 7, without the adoption of this referred measure.

In summary, we find petitioner's central contention concerning the caption—that it fails to mention that the limitation on debt in Article XI, section 7, would not apply to debt incurred under the proposed amendment—to be well taken. The caption must be modified. However, petitioner's other contentions about the caption do not require modification.[4]

---

[3] Petitioner does not separately argue that the phrase "lowest cost" is a politically "loaded" one that should not be included in a ballot title.

[4] Petitioner adds a new argument concerning the caption in his reply to the state's answering memorandum. He asserts that use of the term "lowest-cost" is inappropriate because it focuses on one aspect of the borrowing process—the interest rate—at the expense of a myriad of other considerations. We decline to address this argument, however, because it is new; it was not advanced in petitioner's opening memorandum and the Attorney General has had no opportunity to respond to it.

We turn next to petitioner's challenges to the "yes" and "no" vote result statements. For convenience, we again set out the ballot title vote result statements:

**"RESULT OF 'YES' VOTE:** "Yes' vote authorizes lowest-cost bonds to finance state owned or operated real and personal property projects. Prohibits property tax for repayment. Limits amount borrowed.

**"RESULT OF 'NO' VOTE:** 'No' vote rejects authorization for state to issue lowest-cost general obligation bonds for real and personal property projects owned or operated by the state."

Petitioner asserts that the "yes" result statement suffers from the same infirmities that he identified with respect to the caption. We agree with petitioner that the "yes" result statement must state the impact of the proposed measure on the operation of present law in Article XI, section 7, of the Oregon Constitution. The statement prepared by the Legislative Assembly does not do that. On referral to the Attorney General, the "yes" result statement must be modified in that regard.

Petitioner also repeats the other arguments that he made about the caption, but, once again, we do not find them persuasive. Petitioner does, however, advance one additional argument. He asserts that the statement "[l]imits amount borrowed" in the "yes" result statement is misleading because the word "limits" suggests constraints on state borrowing but, in fact, the referred measure authorizes substantial new debt. It is true that the referred measure authorizes borrowing up to an amount equal to "one percent of the real market value of the property in this state," and that such an amount doubtless is a large one. Nonetheless, it is a true "limit." Under those circumstances, we cannot say that the "yes" result statement is insufficient in that regard.

■ Petitioner attacks the "no" vote result statement on the ground that it amounts to little more than a declaration that "no rejects yes." That is a fair characterization, and it is not satisfactory under the facts of this case. *See, e.g., Nesbitt v. Myers*, 335 Or 424, 432-33, 71 P3d 530 (2003) (criticizing such "no" vote result statements). The "no" vote result statement needs to include a description of the law that a "no" vote

would leave in place: Article XI, section 7, of the Oregon Constitution. That would allow the "no" vote result statement to perform its function in advising potential voters as to the choice they are being asked to make. The "no" vote result statement must be modified.

 Finally, we turn to petitioner's arguments pertaining to the summary. For convenience, we once again set out the Legislative Assembly's summary:

> "**SUMMARY:** The measure amends the Oregon Constitution to authorize the state to issue general obligation bonds to finance acquisition, construction, remodeling, repair, equipping or furnishing of state owned or operated property. General obligation bonds are the cheapest method of borrowing the state may use and would cost less than the certificates of participation the state currently uses. The bonds would save an estimated $5 million on interest costs for each $100 million issued. The measure does not authorize any specific bonds, but authorizes the Legislative Assembly to enact implementing legislation. The measure prohibits the levy of property taxes to repay the bonds and limits the amount of outstanding bonds to one percent of the real market value of property in the state."

ORS 250.035(2)(d) requires that a ballot title contain a "concise and impartial statement * * * summarizing the state measure and its major effect." "The function of [the] summary is to provide voters with enough information to understand what will happen if the proposed measure is approved, *i.e.*, to advise voters of the 'breadth' of a measure's impact." *Caruthers v. Kroger*, 347 Or 660, 670, 227 P3d 723 (2010).

Petitioner raises four objections to the summary. First, he argues that, like the caption and the "yes" and "no" vote result statements, the summary is deficient because it fails to inform voters that SJR 48, if adopted, would exempt the new borrowing authority from the debt limitation in Article XI, section 7, of the Oregon Constitution. We agree. On referral, the summary must be modified in that respect.

Second, petitioner argues that the summary fails to inform voters that the debt incurred pursuant to the referred

measure is secured by the taxing authority and the full faith and credit of the state. We consider this argument to be a more focused version of the one just discussed. As such, it is well taken. We assume that this argument will be met by the manner in which the Attorney General deals with petitioner's first point.

■ Third, petitioner challenges the statement in the summary that "the bonds would save an estimated $5 million on interest costs for each $100 million issued." This statement is misleading, petitioner argues, because the ordinary reader would understand the savings so described to occur annually, while the actual projected savings are over the life of the particular bonds. The Attorney General responds that the summary will not be misread in that way. Both sides, in other words, ask us to speculate about how the words in question will be understood. Without suggesting that we are wholly reassured by the Attorney General's argument, we nonetheless must say that we are unpersuaded by petitioner's contrary view. We therefore do not refer the summary to the Attorney General on that basis.

■ Finally, petitioner challenges the statement in the summary that "[g]eneral obligation bonds are the cheapest method of borrowing the state may use and would cost less than the certificates of participation the state currently uses." He makes two arguments concerning that statement. He argues, initially, that "cheapest" is a "loaded" word that is "politically charged and advocates support for the measure." He then asserts that the sentence also is misleading because, although the *interest rate* on general obligation bonds doubtless would be lower than the interest rates on certificates of participation, the actual "cost" to the taxpayers of the state for using general obligation bonds probably "remains constant [compared with the cost of using certificates of participation], as the value of the additional risk assumed by Oregon taxpayers should be proportionate to the value of the interest rate reduction." The Attorney General responds to petitioner's initial argument by asserting that "cheapest" is a fair substitute for the phrase "lowest-cost," particularly if the word limitation is tight. He does not respond to the second argument.

Better terms there may be, but we cannot say that the summary fails to comply substantially with the requirements of ORS 250.035(2)(d) in its use of "cheapest." We also reject petitioner's second theory on precisely that ground—it is a theory. Petitioner may or may not be correct in speculating as to the true relative "cost" to Oregon taxpayers of general obligation bonds compared to certificates of deposit; we have no way of knowing. And, because we have no way of knowing, we cannot hold that the sentence in question fails the statutory test of substantial compliance.

Based on the foregoing discussion, we hold that the Legislative Assembly's ballot title for SJR 48 fails to comply substantially with the requirements of law for such ballot titles set out in ORS 250.035(2). Pursuant to ORS 250.085(8), the ballot title is referred to the Attorney General for modification.

The ballot title is referred to the Attorney General for modification.

## APPENDIX

Enrolled

Senate Joint Resolution 48

Be It Resolved by the Legislative Assembly of the State of Oregon:

PARAGRAPH 1. The Constitution of the State of Oregon is amended by creating a new Article to be known as Article XI-P, such Article to read:

### ARTICLE XI-P

SECTION 1. (1) In the manner provided by law and notwithstanding the limitations contained in section 7, Article XI of this Constitution, the credit of the State of Oregon may be loaned and indebtedness incurred to finance the costs of:

(a) Acquiring, constructing, remodeling, repairing, equipping or furnishing real or personal property that is or will be owned or operated by the State of Oregon, including, without limitation, facilities and systems;

(b) Infrastructure related to the real or personal property; or

(c) Indebtedness incurred under this subsection.

(2) In the manner provided by law and notwithstanding the limitations contained in section 7, Article XI of this Constitution, the credit of the State of Oregon may be loaned and indebtedness incurred to refinance:

(a) Indebtedness incurred under subsection (1) of this section.

(b) Borrowings issued before the effective date of this Article to finance or refinance costs described in subsection (1) of this section.

SECTION 2. (1) Indebtedness may not be incurred under section 1 of this Article if the indebtedness would cause the total principal amount of indebtedness incurred under section 1 of this Article and outstanding to exceed one percent of the real market value of the property in this state.

(2) Indebtedness incurred under section 1 of this Article is a general obligation of the State of Oregon and must contain a direct promise on behalf of the State of Oregon to

pay the principal, premium, if any, and interest on the obligation. The full faith and credit and taxing power of the State of Oregon must be pledged to payment of the indebtedness. However, the State of Oregon may not pledge or levy an ad valorem tax to pay the indebtedness.

SECTION 3. The Legislative Assembly may enact legislation to carry out the provisions of this Article.

SECTION 4. This Article supersedes conflicting provisions of this Constitution.

PARAGRAPH 2. The amendment proposed by this resolution shall be submitted to the people for their approval or rejection at the next regular general election held throughout this state.