Submitted on the record March 6, ballot title referred to Attorney General for modification March 22, ballot title certified April 13, 2006 (340 Or 412)

## Margaret Murphy CARLEY
## and Pat McCormick,
*Petitioners,*

*v.*

## Hardy MYERS,
## Attorney General,
## State of Oregon,
*Respondent.*

(SC S53115)

## Art TOWERS,
*Petitioner,*

*v.*

## Hardy MYERS,
## Attorney General,
## State of Oregon,
*Respondent.*

(SC S53116)
(Cases Consolidated)

132 P3d 658

John A. DiLorenzo, Jr., and Gregory A. Chaimov, of Davis Wright Tremaine LLP, Portland, filed the petition for petitioners Margaret Murphy Carley and Pat McCormick.

Steven C. Berman, of Stoll Stoll Berne Lokting & Schlachter, P.C., Portland, filed the petition for petitioner Art Towers.

Michael C. Livingston, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With him on the answering memorandum were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before De Muniz, Chief Justice, Carson, Gillette, Durham, Riggs, and Balmer, Justices.*

DURHAM, J.

---

* Kistler, J., did not participate in the consideration or decision of this case.

## DURHAM, J.

This case involves two petitions that seek review of a ballot title under ORS 250.085(2). The Attorney General has certified the ballot title for a proposed initiative measure that the Secretary of State has denominated as Initiative Petition 105 (2006). The proposed measure, if approved by the voters, would enact certain nursing staff requirements for a "nursing home," a term that the measure specially defines.

All petitioners submitted written comments regarding the draft ballot title. Therefore, they are entitled to seek a different ballot title in this court. For the reasons set forth below, we refer the ballot title to the Attorney General for modification. ORS 250.085(8).

The Attorney General certified the following ballot title for the proposed measure:

"ESTABLISHES STAFFING REQUIREMENTS FOR NURSING HOMES; SPECIFIES MINIMUM ALLOWABLE PER-SHIFT STAFF-TO-RESIDENT RATIOS

"RESULT OF 'YES' VOTE:  'Yes' vote requires assignment of nursing staff for each 'nursing home' resident; establishes residents-per-assigned-nursing-staff ratios, compliance requirements, and penalties for violations.

"RESULT OF 'NO' VOTE:  'No' vote retains statute requiring Department of Human Services' rules specifying maximum number of patients per nursing assistant per shift in long-term care facilities.

"SUMMARY: Measure replaces current statute requiring Department of Human Services to adopt rules specifying maximum number of patients per nursing assistant per shift in long-term care facilities. Measure applies to 'nursing homes' and not to adult foster homes, residential care and assisted living facilities, or facilities operated by and physically connected to general hospitals. Measure requires assignment of a nursing assistant and nurse or 'CMA' for each resident to provide direct and limits the number of residents assigned to each; requires posting and recording of staffing information and cost auditing; requires Department of Human Services to establish monetary penalties for staffing ratio violations, and authorizes

Department to restrict admissions or deny or revoke nursing home licenses based on number and severity of violations. Other provisions."

Petitioners begin by pointing out that the Attorney General's certified ballot title incorporates the caption from his draft ballot, prepared under ORS 250.065(3),[1] rather than the ballot title caption that he intended to certify. The Attorney General acknowledges that that contention is correct. The record confirms that the Attorney General intended to certify the following ballot title caption:

"REQUIRES ASSIGNED NURSING STAFF
FOR 'NURSING HOME' RESIDENTS; LIMITS
NUMBER OF RESIDENTS PER ASSIGNED STAFF"

Consequently, the Attorney General requests that the court refer the ballot title for correction "by certifying the caption that the Attorney General intended to certify * * *." *See* ORS 250.085(8) (describing referral process). The Attorney General further agrees that the inadvertent omission of a term in the summary, which we discuss below in greater detail, also requires referral for correction.

The inadvertent omission of the correct caption from the certified ballot title, as described above, leads the Attorney General to use the term "modified caption" to refer to the caption as he proposes to modify it on referral as a means of distinguishing that caption from the caption that he erroneously certified. We, too, will adopt that terminology in this opinion.

Before turning to petitioners' objections, we deem it appropriate to specify how the court will conduct its review of this ballot title in light of the unusual procedural posture of this case. Specifically, the court has before it not only petitioners' arguments about the certified ballot title, ORS 250.085(2), but also several arguments regarding the modified ballot title caption that the Attorney General proposes to

---

[1] ORS 250.065(3) provides:

"Not later than the fifth business day after receiving the copies of the prospective petition for a state measure to be initiated, the Attorney General shall provide a draft ballot title for the state measure to be initiated and return one copy of the prospective petition and the ballot title to the Secretary of State."

certify on referral. The issue is whether the court may consider arguments about the modified ballot title caption in this proceeding.

Oregon law makes it clear that, subject to this court's review under ORS 250.085(2), the statutory responsibility for drafting and certifying ballot titles for proposed initiative state measures, falls under present practice, to the Attorney General. ORS 250.065(3); ORS 250.067(1) to (3). The Attorney General conducts the processes of drafting and certifying ballot titles under short statutory deadlines. *See* ORS 250.065(3) (Attorney General must provide draft ballot title not later than five business days after receipt of copy of prospective petition for state measure to be initiated); ORS 250.067(2) (Attorney General must consider public's comments and certify ballot title not later than 10 days after receiving comments from Secretary of State).

We recognize that, despite the best efforts of all involved, mistakes occasionally may occur in the statutorily accelerated process of certifying a ballot title. The incorporation of an unintended caption in the certified ballot title, as in this case, is an example. Typically, the Attorney General has responded to those problems by notifying the court and other parties of the correct wording that the Attorney General should have certified and will certify on referral. *See Greenberg v. Myers,* 340 Or 65, 72-73, 127 P3d 1192 (2006) (on review, Attorney General proposed a revised "yes" vote result statement to satisfy legal requirements, but the petitioner objected that the revision was not sufficient; court nevertheless considered and resolved the objection).

We appreciate that response and encourage the Attorney General to address errors that he discovers during this court's review in a similar manner. By acknowledging an error and stating the amendatory wording that he proposes to correct it on referral, the Attorney General affords petitioners an opportunity to respond to the amendatory wording, as was the case in *Greenberg,*[2] and facilitates expeditious

---

[2] ORAP 11.30(9) authorizes petitioners to file a reply memorandum to the Attorney General's answering memorandum. Petitioners who have such objections to proposed modified wording should state them in a reply memorandum filed pursuant to that rule. The reply memorandum affords petitioners the opportunity to

review of the ballot title by this court. As the legislature made clear in ORS 250.085(7),

> "The review by the Supreme Court *shall be conducted expeditiously* to ensure the orderly and timely circulation of the petition or conduct of the election at which the measure is to be submitted to the electors."

(Emphasis added.)

In view of the legislature's requirement that this court must review ballot titles expeditiously, we will address and resolve, to the extent possible, a petitioner's objections to proposed amendatory wording that the Attorney General intends to incorporate into a ballot title on referral without confining our review to the certified ballot title that contains an acknowledged error. We have considered but now reject the alternative course—confining the court's review solely to the certified ballot title that contains an acknowledged error—because that approach potentially could result in unnecessary re-referrals to the Attorney General and expand litigation in this court, thus adding significant delay to the process of ballot title certification.

In addressing future objections to proposed amendatory wording by the Attorney General, this court will be mindful of the statutory limits that apply to the court's consideration of arguments not presented in writing to the Secretary of State. ORS 250.085(6) provides:

> "When reviewing a title prepared by the Attorney General, the Supreme Court shall not consider arguments concerning the ballot title not presented in writing to the Secretary of State unless the court determines that the argument concerns language added to or removed from the draft title after expiration of the comment period provided in ORS 250.067."

The court's willingness to follow the review procedure outlined above regarding corrections proposed by the Attorney General may give rise to unforeseen procedural claims by petitioners or other electors who may claim dissatisfaction with the Attorney General's certified ballot title or

---

explain whether they continue to object to the Attorney General's proposed modified wording in a ballot title and the reasons for any objection.

his proposed amendments. We will address those claims if and when they arise. It is sufficient to say at present that the court will review a petitioner's objections to proposed amendatory wording in a ballot title, as described above, to fulfill, to the greatest extent possible, the legislature's policy requiring this court to conduct the review of ballot titles expeditiously.

We turn now to petitioners' objections to the certified caption and the modified caption that the Attorney General intends to certify on referral. The ballot title caption for a proposed initiative must reasonably identify within 15 words the subject matter of the proposed initiative. ORS 250.035(2)(a). We review all challenged parts of the ballot title for "substantial compliance with the requirements of ORS 250.035." ORS 250.085(5).

Petitioners and the Attorney General agree that the certified caption does not comply substantially with ORS 250.035(2)(a) because, among other things, it restates current Oregon law rather than identifying the subject matter of the proposed measure. We agree and conclude that we must refer the caption to the Attorney General for modification. ORS 250.085(8).

■ Petitioners Carley and McCormick argue that the Attorney General has erred by using the term "nursing home" highlighted by quotation marks "without going on to define the term elsewhere in the title." It is true that this court has approved the use of specially defined terms in quotation marks, followed by the word "defined" in parentheses, to signal that the proposed measure specially defines the term and uses it in that specially defined sense. *See, e.g., Hunnicutt v. Myers*, 340 Or 83, 86, 127 P3d 1182 (2006) (illustrating principle). However, our cases have not gone so far as to require that the ballot title set out the special definition that the proposed measure would create. The asserted objection is not well-taken.[3]

---

[3] The Attorney General may decide on referral whether to insert "(defined)," or another similar signal, following the phrase "nursing home" in the caption.

Petitioners Carley and McCormick also argue that the term "nursing home" is a politically loaded term designed to garner a favorable vote. We decline to address that argument, because those petitioners did not present it in writing to the

■ Petitioners Carley and McCormick also complain that the certified caption should use the term "patient" rather than the term "resident" to describe the persons to whom the proposed measure applies. We agree with the Attorney General that the term "resident" is not confusing in this context and that it is unnecessary to require use of the term "patient" in the certified caption to achieve substantial compliance with ORS 250.035(2)(a).

■ Finally, petitioners Carley and McCormick contend that the modified caption still uses the term "staff" without the modifier "nursing," even though the Attorney General agreed in writing that the term "staff," standing alone, created an ambiguity that required correction. The Attorney General made that comment in response to criticism of the caption of the draft ballot title, which stated:

> "Establishes Staffing Requirements for Nursing Homes; Specifies Minimum Allowable Per-Shift Staff-to-Resident Ratios"

The Attorney General addressed the ambiguity of the term "staff" in that caption by introducing two new phrases into the modified caption, "assigned nursing staff" and "assigned staff." It is apparent that the first of those phrases addressed the ambiguity problem and that the 15-word limitation in ORS 250.035(2)(a) prevented the inclusion of the term "nursing" again in the second phrase. Under the circumstances, we conclude that the Attorney General's choice of terminology complies substantially with ORS 250.035(2)(a).[4]

We turn to petitioner Towers' objection to the certified caption. He argues, as did petitioners Carley and McCormick, that the caption must state clearly that the staffing requirements in the proposed measure apply *only* to the nursing staff of covered facilities. The Attorney General

---

Secretary of State and it does not address new wording added to the draft ballot title. ORS 250.085(6)

[4] Petitioners Carley and McCormick submit other arguments about the caption, but we reject them without discussion.

Those petitioners make other suggestions in their petition that they assert will improve the clarity of the ballot title caption. Because those petitioners did not raise those matters in writing to the Secretary of State, we do not address them on review. ORS 250.085(6). The Attorney General may consider those suggestions on referral.

agrees and explains that his modified caption resolves that objection. We agree with the Attorney General.

■        Petitioners Carley and McCormick raise objections to the "yes" vote result statement. That statement must describe "the result if the state measure is approved[ ]" within 25 words. ORS 250.035(2)(b). In *Novick/Crew v. Myers*, 337 Or 568, 574, 100 P3d 1064 (2004), this court stated:

> "[T]he result of a proposed measure's enactment that belongs in the 'yes' vote result statement is that outcome that is the most significant and immediate, or that carries the greatest consequence, for the general public. Stated differently, the legislature intended the 25-word 'yes' vote result statement to notify petition signers and voters of the result or results of enactment that would have the greatest importance to the people of Oregon."

Petitioners Carley and McCormick criticize the Attorney General's "yes" vote result statement on several of the same grounds that they raised in objecting to the caption. They also contend that the "yes" vote result statement is defective because it fails to disclose how seriously the proposed measure will impact state authority to set nursing staff ratios based on patient needs and nursing practices, and uses confusing, inaccurate, or insufficiently informative terminology. They also assert that the combined "yes" and "no" result statements fail to use different terms ("resident" and "patient") "that an average elector would understand to refer to the same thing[.]" *See* ORS 250.035(2)(c) (stating that requirement). We have considered each of those objections and the Attorney General's responses, and we reject each objection without further discussion.

■        Finally, petitioners Carley and McCormick object to the Attorney General's summary. ORS 250.035(2)(d) requires that a ballot title contain "[a] concise and impartial statement of not more that 125 words summarizing the state measure and its major effect." In *Novick/Crew*, this court explained the "major effect" requirement as follows:

> "Logically, those would include additional important consequences or details that the result statement does not

convey and helpful contextual information about the impact of the proposed measure on existing law."

337 Or at 574. This court also stated:

"[T]he Attorney General's choices in those respects are subject to review by this court for substantial compliance under ORS 250.085(5). A party does not demonstrate a failure of substantial compliance merely by showing that some other choice by the Attorney General would have been appropriate."

*Id.* at 574-75.

Petitioners Carley and McCormick assert 20 objections to the summary. We reject each objection without discussion except for the two matters discussed below.

First, petitioners Carley and McCormick argue that the Attorney General has used an unfamiliar abbreviation, "CMA," in the summary, and has placed the abbreviation in quotation marks, but has provided no definition for it. Petitioners Carley and McCormick are entitled to object to the use of "CMA" at this stage because that abbreviation was added after the comment period provided in ORS 250.067 had expired. ORS 250.085(6).

The abbreviation "CMA" does not have a single familiar referent. The placement of that abbreviation in quotation marks without an accompanying signal, such as "(defined)," forces the reader to guess whether the abbreviation refers to a specially defined term in the measure, or is a shorthand usage for an unidentified phrase that the Attorney General has adopted in the interest of brevity. The likelihood of reader confusion over the abbreviation "CMA" is a particular concern in this context. As petitioners Carley and McCormick point out, the abbreviation "CMA" might refer to a defined abbreviation in the proposed measure, but also may refer to two other categories of medical personnel: a certified medication aide, *see* OAR 851-063-0100 through 851-063-0110 (describing standards and duties for the certified medication aide) and a certified medical assistant.[5]

---

[5] OAR 851-063-0020(4) provides:

" 'Certified Medication Aide (CMA)' means a Certified Nursing Assistant who has had additional training in administration of non-injectable medication and holds a current Oregon CMA Certificate."

■ The Attorney General relies on *Crabtree v. Paulus*, 296 Or 325, 675 P2d 488 (1984), but that case is distinguishable. *Crabtree* involved a proposed initiative that would amend the Oregon Constitution to require admission of "reliable evidence" in criminal trials. The proposed initiative did not define the phrase "reliable evidence." *See Remington v. Paulus*, 296 Or 317, 321, 675 P2d 485 (1984) (quoting ballot title for proposed initiative). The petitioners complained that the use of the term "reliable" in the ballot title was misleading. The court stated that the use of the word "reliable" "is not unfair, if set off in quotation marks to show that the proposed amendment, rather than respondent or this court uses this word." *Crabtree*, 296 Or at 327. However the court did more than add quotation marks to the word "reliable" in the explanation. The court created a new sentence that stated: "The measure does not define 'reliable evidence.' " *See Remington*, 296 Or at 321. That sentence made it clear that the proposed initiative did not specially define that phrase, and that the source of that phrase was the proposed initiative, not the author of the ballot title. Merely adding quotation marks to a doubtful or disputed term does not provide that required degree of clarity.

■ No other part of the ballot title provides any definition for the abbreviation "CMA." The placement of the term "nurse" in the same sentence as the abbreviation "CMA" is a contextual suggestion that the abbreviation may refer to a class of personnel. We conclude, however, that the limited nature of the contextual reference, the lack of any definition in the summary, and the absence of any signal indicating that the abbreviation refers to a specially defined term in the proposed measure will lead to unnecessary confusion on the part of voters and petition signers. On referral, the Attorney General must revise the reference to "CMA" in the summary.

Second, petitioners Carley and McCormick point out that no noun follows the adjective "direct" in the third sentence of the Attorney General's summary. The Attorney General agrees that that objection is valid and requires referral to add the term "care" after the term "direct." We concur.

---

The parties cite no Oregon statute or rule that specially defines a "certified medical assistant." However the American Association of Medical Assistants offers certification for a type of health professional known as a Certified Medical Assistant. *See* www.aama-ntl.org (website information).

Ballot title referred to Attorney General for modification.