Submitted on the record July 18, ballot title referred to Attorney General for modification October 11, 2007, ballot title certified October 26, 2007 (343 Or 367)

Charles TAUMAN,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S54878)

170 P3d 556

Kathryn H. Clarke, Portland, filed the petition to review ballot title and reply to respondent's answering memorandum for petitioner.

Rolf C. Moan, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With him on the memorandum were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

KISTLER, J.

**KISTLER, J.**

Petitioner seeks review of the Attorney General's certified ballot title for Initiative Petition 85 (2008). *See* ORS 250.085(2) (specifying requirements for seeking review of certified ballot title). This court reviews the certified ballot title to determine whether it substantially complies with ORS 250.035(2). *See* ORS 250.085(5) (stating standard of review). For the reasons explained below, we refer the ballot title to the Attorney General for modification.

Initiative Petition 85, if enacted, would add a section to Article XV of the Oregon Constitution limiting the recovery of noneconomic and punitive damages from a "charity" to $1 million per claimant, with annual adjustments for inflation. The measure defines a "charity" as

"a nonprofit organization that is organized for the conduct of charitable, benevolent, humane, patriotic, religious, philanthropic, recreational, social, educational, medical, eleemosynary, civic or fraternal activities, and that is exempt from federal income taxation by reason of such activity. This includes any church or group that is organized for the purpose of worship or religious teaching, and that is exempt from federal income taxation by reason of such activity."

The Attorney General certified the following ballot title for Initiative Petition 85:

"AMENDS CONSTITUTION: LIMITS RECOVERY OF NON-ECONOMIC DAMAGES (DEFINED) FROM CHARITY (DEFINED) TO $1 MILLION PER CLAIMANT

"RESULT OF 'YES' VOTE: 'Yes' vote places $1 million limit on the amount of non-economic damages (defined) that a claimant may recover from a charity (defined).

"RESULT OF 'NO' VOTE: 'No' vote retains current law, which generally does not distinguish between charities and other entities in describing non-economic damages that may be recovered from them.

"SUMMARY: Amends constitution. State law currently prohibits limits on non-economic damages in civil cases for which right to jury trial existed in 1857; places $500,000 cap on non-punitive non-economic damages for

bodily injury; places $500,000 cap on damages recoverable from public bodies (including certain non-profit entities receiving government funding). Measure limits claimant's recovery of non-economic damages from charities to $1 million. Defines 'non-economic damages' as subjective non-monetary losses including pain; suffering; reputation injury; loss of companionship, consortium; punitive damages; interference with normal, usual activities. Defines 'charity' as nonprofit organization exempt from federal income taxation due to charitable, benevolent, humane, patriotic, religious, philanthropic, recreational, social, education, medical, eleemosynary, civic or fraternal activities. Retains common-law right to recover economic damages against charities. Other provisions."

Petitioner challenges the caption, the "yes" vote result statement, the "no" vote result statement, and the summary.

■      A ballot title caption must contain "not more than 15 words that reasonably identif[y] the subject matter of the state measure." ORS 250.035(2)(a). Petitioner argues that the caption fails to comply with that standard because its use of the term "charity" will leave most readers with a false impression about the proposed measure's scope. *See Sizemore/Terhune v. Myers*, 342 Or 578, 583, 157 P3d 188 (2007) (stating that, to comply with statutory standards, a caption must "describ[e] the [proposed measure's] subject accurately and in terms that will not confuse or mislead potential petition signers and voters") (quoting *Greene v. Kulongoski*, 322 Or 169, 174-75, 903 P2d 366 (1995)). For the reasons that follow, we agree.

In common parlance, a "charity" is "an organization or institution engaged in the free assistance of the poor, the suffering, or the distressed." *Webster's Third New Int'l Dictionary* 378 (unabridged ed 2002). By contrast, the proposed measure would include in its definition of a "charity" numerous nonprofit organizations engaged in a variety of other endeavors, including "recreational" and "fraternal activities." That definition is broad enough potentially to include a symphony association, the Boy Scouts, a private college, and some fraternities, none of which is commonly understood to be a charity. Because the proposed measure

defines the term "charity" more broadly than the term commonly is understood, the caption's use of the term has the potential to leave petition signers and voters with a false impression of the proposed measure's subject matter. A reasonable person reading the caption likely would understand, mistakenly, that the proposed measure would affect only those organizations that aid the poor, the suffering, and the distressed when, in fact, the proposed measure could affect a variety of other tax-exempt organizations as well. This court has required that the caption be modified in similar circumstances. *See Sager v. Myers*, 328 Or 528, 531-33, 982 P2d 1104 (1999) (court modified caption when the proposed measure defined terms in an "uncommon, if not unique," way); *Chase v. Myers*, 328 Or 518, 521-23, 982 P2d 1099 (1999) (same); *Witt v. Kulongoski*, 319 Or 7, 14-17, 872 P2d 14 (1994) (court modified caption when the proposed measure gave a term "a very different and uncommon meaning"); *see also Bernard v. Keisling*, 317 Or 591, 596, 858 P2d 1309 (1993) (court will not hesitate to look beyond words of measure if those words obfuscate measure's subject).

The Attorney General maintains that no modification is necessary here because the caption places the word "defined" in parentheses after the term "charity." We reach a different conclusion. Although "this court has approved the use of specially defined terms in quotation marks, followed by the word 'defined' in parentheses, to signal that the proposed measure specially defines [a] term and uses it in that specially defined sense," *Carley / Towers v. Myers*, 340 Or 222, 229, 132 P3d 651 (2006), this court has never held that the use of such signals is always sufficient to ensure compliance with statutory standards. Rather, the court has approved those signals when, for example, the meaning of the disputed term was ambiguous and the proposed measure defined the term in a manner generally consistent with an accepted meaning of the term. *See, e.g., Carley / Towers*, 340 Or at 232-33 (illustrating proposition); *Wilkeson v. Myers*, 329 Or 540, 544-45, 992 P2d 456 (1999) (same); *Huss v. Kulongoski*, 323 Or 266, 917 P2d 1018 (1996) (same). Here, by contrast, the proposed measure gives the term "charity" a unique definition that is significantly broader than its common definition. Under those circumstances, the signals described in *Carley /*

*Towers* do little to cure the confusion caused by the caption's use of the term. Following *Sager, Chase,* and *Witt,* we conclude that the caption in this case is impermissibly confusing despite the presence of the word "defined" after the word "charity." Accordingly, we refer the caption to the Attorney General for modification.

Petitioner also challenges the "yes" and "no" vote result statements. ORS 250.035(2)(b) and (c) require two "simple and understandable statement[s] of not more than 25 words" that describe the result if a state measure is approved and if it is rejected. As with the caption, petitioner argues that the "yes" and "no" vote result statements are confusing because of their use of the term "charity." For the reasons stated above, we agree. *See Sager,* 328 Or at 533 (modifying "yes" and "no" vote result statements in similar circumstances); *Chase,* 328 Or at 524 (same).

■ Finally, petitioner challenges the summary. ORS 250.035(2)(d) requires "[a] concise and impartial statement of not more than 125 words summarizing the state measure and its major effect." As with the caption and the "yes" and "no" vote result statements, petitioner argues that the summary's use of the term "charity" is confusing. We disagree. Unlike the caption or the "yes" and "no" vote result statements, the summary explains how the proposed measure defines the term "charity." That explanation substantially reduces the risk that a voter will misunderstand the proposed measure's scope when he or she encounters the term "charity" elsewhere in the summary. Given that reduced risk of confusion, we cannot say that the Attorney General has failed to substantially comply with statutory standards by including the term "charity" in the summary. *See* ORS 250.085(5) (stating standard of review); *Sager,* 328 Or at 533-34 (summary substantially complied with statutory standards in similar circumstances); *Chase,* 328 Or at 524-25 (same).

Ballot title referred to the Attorney General for modification.